**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

| | | |
|---|---|---|
| W.F., a minor, through her parent and Guardian BRITTANY MILLER, BRITTANY MILLER, individually, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: CV-2026- |
| MEDSTAR EMERGENCY MEDICAL SERVICES, INC., CARLOS D. GARCIA, individually as an employee with Loxley Police Department, and EDGAR FULMER, individually as an employee with the Loxley Police Department, CARLIE DEES, individually as an employee with the Medstar Emergency Service, Inc., and JAYDEN BYRD, individually as an employee with the Medstar Emergency Service, Inc., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, W.F., a minor child through her parent and guardian Plaintiff Miller, and Plaintiff Miller, hereby files this Complaint against Defendants and alleges as follows.

**<u>Jurisdiction and Venue</u>**

1.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983, § 1985, and § 1988, as well as the Fourth and Fourteenth Amendments to the United States Constitution. Federal question jurisdiction is proper under 28 U.S.C. § 1331.

2.     This Court also has jurisdiction over additional claims pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the parties and the amount in

controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs are residents of the State of Ohio, and Defendants are residents of the State of Alabama. The amount in controversy exceeds $75,000.00.

3.    Venue is proper in the United States District Court for the Southern District of Alabama, Mobile Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to the claims occurred in Baldwin and Mobile Counties, Alabama, which are within this District.

## Parties

4.    Plaintiff Brittany Miller ("**Plaintiff Miller**") is an adult resident of Ohio and is the parent and next friend of W.R.F., a minor. Plaintiff Miller brings this action individually and on behalf of W.R.F.

5.    Plaintiff W.R.F. (also referred to as "minor child" and "**Plaintiff W.F.**") is a minor child residing in Ohio. The minor child is represented in this action by Plaintiff Miller, acting as parent and next friend.

6.    Defendant Medstar Emergency Medical Services, Inc. ("**Defendant Medstar EMS**") is an emergency medical services provider that, at all relevant times, provided ambulance, emergency medical, or related services in Baldwin County, Alabama.

7.    Defendant Carlie Dees ("**Defendant Dees**") is an individual emergency medical services provider, paramedic, emergency medical technician, employee, agent, servant, or representative of MedStar EMS.

8.    Defendant Jayden Byrd ("**Defendant Byrd**") is an individual emergency medical services provider, paramedic, emergency medical technician, employee, agent, servant, or representative of MedStar EMS.

9. At all relevant times, **Defendant Dees** and **Defendant Byrd** were acting within the line and scope of their employment, agency, service, or contractual relationship with **Defendant MedStar EMS**.

10. Defendant Carlos Garcia ("**Defendant Garcia**") is an adult residing in Alabama, and at all material times referenced herein, was employed by the Loxley Police Department in Baldwin County, Alabama. He is named herein in his individual capacity as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

11. Defendant Edgar Fulmer ("**Defendant Fulmer**") is an adult residing in Alabama, and at all material times referenced herein, was employed by the Loxley Police Department in Baldwin County, Alabama. He is named herein in his individual capacity as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

12. **Fictitious Defendants C-Z** are those persons, entities, employees, agents, contractors, supervisors, medical providers, governmental actors, or other responsible parties whose names are presently unknown to Plaintiffs, but who participated in, caused, contributed to, supervised, ratified, or are otherwise legally responsible for the acts and omissions alleged herein. Plaintiffs are ignorant of their true names and capacities at this time and will amend this Complaint to substitute their true names when ascertained.

### Facts Alleged Against Defendant Medstar EMS and Fictitious Defendants

13. On or about May 14, 2024, Plaintiff Miller was the mother and lawful custodian of W.F., a minor child.

14. W.F. was born on February 21, 2024, and was approximately two months old at the time of the events made the basis of this action.

15.    In early May 2024, Plaintiff Miller, W.F., and Lawrence Dorr traveled to Orange Beach, Baldwin County, Alabama, for a family vacation (collectively "family").

16.    On or about May 14, 2024, the family concluded their vacation and began travelling north on the Baldwin Beach Express in Baldwin County, Alabama.

17.    At approximately 10:00 p.m., Plaintiff Miller stopped at Buc-ee's ("Buc-ees") located at 20403 County Road 68, Robertsdale, Alabama, 36567 and went inside the store.

18.    As they returned to their car, it began raining.

19.    Due to the ongoing weather, the family spent the night in Buc-ee's parking lot.

20.    During the night, W.F. slept in Plaintiff Miller's arms inside the vehicle.

21.    The following morning, the Loxley Police Department received a report that a male subject got out of a red SUV and was stumbling around and fell in the Buc-ees parking lot.

22.    Defendants Garcia and Fulmer responded to the Buc-ee's parking lot and located the family asleep inside the vehicle.

23.    The family was awakened by the responding officer.

24.    At or around that time, W.F. was audibly crying and moving.

25.    During the encounter, Defendant Garcia reported that Plaintiff Miller allegedly had an odor of alcohol, slurred speech, dry or cracked lips, and a white or dry tongue.

26.    Plaintiff Miller denied being intoxicated.

27.    Miller and Mr. Dorr were separated from each other and separately questioned by Loxley Police Officers.

28.    During questioning, Ms. Miller admitted to having two "sips" of rum the night before.

29. At some point during the encounter, emergency medical services were requested or summoned to the scene.

30. Defendants Dees and Byrd (collectively referred to as "EMS workers"), employees for Defendant Medstar EMS, arrived at the scene.

31. The EMS workers undertook an assessment, evaluation, examination, or observation of W.F. without the consent of Plaintiff Miller.

32. During their assessment, the EMS workers used or applied a medical device or physical stimulus to W.F.'s foot to check the child's responsiveness.

33. The EMS workers reported, stated, documented, or represented that W.F. was unresponsive to stimulation.

34. The EMS workers further reported that W.F. had shallow respirations, pinpoint pupils, and areflexia.

35. The EMS workers removed W.F. from the vehicle and placed him on the ground immediately outside the vehicle and gave the child oxygen through a portable oxygen machine.

36. The EMS workers communicated their assessment, conclusions, or representations concerning W.F.'s condition to an unknown doctor.

37. The EMS workers prepared W.F. a bottle using formula and water and provided it to W.F., which he drank.

38. The EMS workers made multiple phone calls throughout the interaction.

39. The EMS workers coordinated with Defendant Garcia in an attempt to convince Plaintiff Miller and Mr. Dorr to consent to medical treatment for W.F.

40. Neither Plaintiff Miller nor Mr. Dorr consented to W.F. being transported to a hospital.

41.    Twenty-eight (28) minutes into the interaction, Defendant Byrd throws her hands up in celebration and informs Defendant Garcia that she received a doctor's order to transport W.F. to the hospital.

42.    The doctor's order was based on the EMS's workers representations about W.F.'s condition.

43.    More than five (5) minutes after receiving the doctor's order to transport W.F. to a hospital, the EMS workers loaded the infant into the ambulance.

44.    The EMS workers were in the ambulance with W.F. for approximately four (4) minutes before leaving the scene.

45.    The EMS workers were present on the scene for more than thirty-five (35) minutes.

46.    Plaintiff Miller informed EMS workers that she was willing to take W.F. to an urgent care facility or other medical provider if medical evaluation was believed necessary.

47.    Despite the lack of parental consent, the EMS workers took custody, control, or physical charge of W.F. for purposes of transporting the child by ambulance.

48.    Prior to taking custody, control, or physical charge of W.F., the EMS workers did only evaluations outside the ambulance near Plaintiff Miller's vehicle, and used no other medical devices other than the portable oxygen machine.

49.    The EMS workers transported W.F. by ambulance from the Buc-ee's parking lot to USA Women and Children's Hospital.

50.    The EMS workers reported to Hospital that the minor child had shallow respirations, bradycardia, hypotonia, and was unresponsive to stimulation (unarousable unresponsiveness).

51.     On the way to the Hospital, the EMS workers administered Narcan to the minor child, which is a medicine that attaches to opioid receptors and reverses and blocks the effects of other opiates.

52.     The EMS workers administered Narcan based on their stated or implied concern that W.F. may have been exposed to, affected by, or overdosing on opioids.

53.     After administering Narcan, the EMS workers falsely reported, stated, documented, or represented that W.F.'s condition, responsiveness, or vital signs improved.

54.     The EMS workers provided information to USA Women and Children's Hospital concerning their assessment of W.F., the administration of Narcan, and their claimed observations before and after Narcan.

55.     Upon arrival at USA Women and Children's Hospital, W.F. was evaluated by hospital personnel.

56.     At 10:35 am, a urine sample was collected from W.F. to generate a toxicology report, which showed no traces for opioids or any other illicit substances.

57.     USA Women and Children's Hospital and/or Defendants Garcia and Fulmer reported the incident to Baldwin County Department of Human Resources ("DHR"), who, on May 16, 2024, filed a sworn Dependency Petition and Request for Pick Up with Baldwin County Circuit Court in Baldwin County, Alabama.

58.     W.R.F. was deprived of Plaintiff Miller's care as a result of Fictitious Defendant A and B's acts on or about May 14, 2024.

### Facts Alleged Against Defendants Garcia and Fulmer

59.     On May 14, 2026, while on patrol, Defendants Garcia and Fulmer responded to a welfare check in the Buc-ee's parking lot.

60.     Upon arrival, Defendants Garcia and Fulmer found Plaintiff Miller and Mr. Dorr asleep in their vehicle, and W.F. sleeping in Plaintiff Miller's arms.

61.     Defendants Garcia and Fulmer separated Plaintiff Miller from Mr. Dorr for investigation.

62.     Defendant Garcia believed that Plaintiff Miller had a strong odor of alcohol, slurred speech, dry and cracked lips, and a white and dry tongue.

63.     During questioning, Ms. Miller denied being intoxicated but admitted to having two "sips" of rum and a "White Claw" the night before.

64.     Defendant Garcia requested consent from Plaintiff Miller and Mr. Dorr to take W.F. to the hospital, which was declined.

65.     Defendant Garcia informed Defendant Fulmer that "since they don't want to give the kid any kind of medical attention," he would do a "sobriety on her" and, if she has a nystagmus or any other kind of impairing signs, he was going to "hook her up" with a "DUI."

66.     Afterward, Defendant Garcia performed a Horizontal Gaze Nystagmus test.

67.     Defendant Garcia stated in his incident report that "during the onset of nystagmus; [Plaintiff] Miller had the lack of smooth pursuit in both eyes, distinct and sustained nystagmus at max deviation in both eyes, and onset of nystagmus prior to 45 degrees in both eyes. [Plaintiff] miller showed 6 clues of impairment."

68.     Defendant Garcia did not conduct a Vertical Gaze Nystagmus test or any other field sobriety tests.

69.     No mind-altering substances were found on Plaintiff Miller's person or within her wingspan inside the vehicle.

70. Defendant Garcia, without probable cause, then arrested and charged Plaintiff Miller pursuant to Alabama Code Section 32-5A-191(a)(5).

71. On December 5, 2024, Plaintiff Miller's charge under Alabama Code Section 32-5A-191(a)(5) was dismissed.

72. Plaintiff Miller was deprived of care, custody, and control of her minor child, suffered emotional damages, incurred court costs attorney fees, and incurred other additional costs in connection with defending the criminal complaint.

## COUNT I: NEGLIGENCE
### *(Against Defendants Medstar EMS, Dees, and Byrd)*

73. Plaintiff W.F. incorporates by reference the "Facts Alleged Against Defendant Medstar EMS" as if fully set forth herein.

74. This Count is brought against Defendants Medstar EMS, Dees, and Byrd and those fictitious defendants whose acts or omissions contributed to the negligent medical assessment, treatment, transport, documentation, and handoff of W.F.

75. At all relevant times, the EMS workers undertook to provide emergency medical assessment, evaluation, treatment, care, transport, documentation, and medical communication concerning W.F.

76. By undertaking to assess, treat, transport, and report W.F.'s medical condition, Defendants owed W.F. a duty to exercise such reasonable care, skill, diligence, and judgment as similarly situated emergency medical services personnel would exercise under the same or substantially similar circumstances.

77. Plaintiff alleges that the EMS workers breached the applicable standard of care in the assessment, treatment, transport, documentation, and medical handoff of W.F.

78.     Defendant MedStar EMS is liable for the negligent acts and omissions of Defendants Byrd and Dees because those acts and omissions were committed within the line and scope of their employment, agency, service, or representative capacity with MedStar EMS.

79.     Defendant MedStar EMS further owed W.F. a duty to provide emergency medical services through personnel who complied with applicable standards of care in pediatric assessment, emergency transport, naloxone administration, medical documentation, and hospital handoff.

80.     Defendant MedStar EMS breached its duties by and through the acts and omissions of its employees, agents, servants, representatives, and personnel, including the EMS workers.

81.     As a direct and proximate result of Defendants' negligence, W.F. was subjected to unnecessary or unsupported emergency medical intervention, ambulance transport, administration of Narcan, hospital evaluation, medical testing, distress, loss of liberty and security, separation from her parent's care, and other damages to be proven at trial.

82.     Plaintiff claims all damages recoverable under Alabama law arising from Defendants' negligent medical assessment, treatment, transport, documentation, and handoff of W.F.

**WHEREFORE**, Plaintiff W.F., a minor child, by and through her parent and next friend, Brittany Miller, demands judgment in her favor and against Defendants MedStar EMS, Dees, Byrd and the applicable fictitious defendants, jointly and severally where permitted by law, and requests compensatory damages, costs of court, prejudgment and post-judgment interest where permitted by law, and such other and further relief as this Court deems just and proper.

## COUNT II: MEDICAL BATTERY
### (*Against Defendants Dees, Byrd and Medstar EMS*)

83.    Plaintiff W.F. incorporates by reference the "Facts Alleged Against Defendant Medstar EMS" as if fully set forth herein.

84.    This Count is brought against Defendants MedStar EMS, Byrd, and Dees, and those fictitious defendants whose acts or omissions contributed to the unauthorized physical contact, medical intervention, treatment, restraint, or transport of W.F.

85.    At all relevant times, W.F. was a minor child, and Plaintiff Miller was W.F.'s parent and lawful custodian.

86.    Plaintiff Miller did not consent to Defendants A and B taking physical control of W.F., transporting W.F. by ambulance, or administering Narcan to W.F.

87.    Plaintiff Miller affirmatively objected to W.F. being transported by ambulance and offered to take W.F. for medical evaluation by less intrusive means.

88.    Plaintiff alleges that W.F. was crying, moving, audible, and otherwise exhibiting signs inconsistent with unarousable unresponsiveness at the time Defendants undertook to remove, transport, and treat him.

89.    Plaintiff alleges that no true medical emergency existed that justified overriding Plaintiff Miller's parental authority, dispensing with consent, taking physical control of W.F., transporting W.F. by ambulance, or administering Narcan.

90.    The EMS workers intentionally touched, handled, restrained, moved, transported, treated, or otherwise physically interfered with W.F. without lawful consent or legal justification.

91.    The EMS workers intentionally administered Narcan to W.F. without parental consent and without a legally sufficient emergency basis for doing so.

92.    The unauthorized physical contact, restraint, transport, and administration of medication constituted an assault, battery, medical battery, or other actionable invasion of W.F.'s bodily integrity under Alabama law.

93.    Defendant MedStar EMS is liable for the intentional acts of Defendants Dees and Byrd committed within the line and scope of their employment, agency, service, or representative capacity, and/or in furtherance of MedStar EMS's business.

94.    As a direct and proximate result of Defendants' unauthorized physical intervention, W.F. was subjected to unwanted physical handling, restraint, ambulance transport, administration of Narcan, bodily intrusion, distress, and other damages to be proven at trial.

95.    Plaintiff claims all compensatory and punitive damages recoverable under Alabama law for Defendants' assault, battery, medical battery, and unauthorized physical intervention.

**WHEREFORE**, Plaintiff W.F., a minor child, by and through her parent and next friend, Brittany Miller, demands judgment in her favor and against Defendants MedStar EMS, Byrd, Dees and the applicable fictitious defendants, jointly and severally where permitted by law, and requests compensatory damages, punitive damages, costs of court, prejudgment and post-judgment interest where permitted by law, and such other and further relief as this Court deems just and proper.

**COUNT III: FALSE IMPRISONMENT**
***(Against Defendants MedStar EMS, Byrd, and Dees)***

96.    Plaintiff W.F. incorporates by reference the "Facts Alleged Against Defendant Medstar EMS" as if fully set forth herein.

97.    This Count is brought against Defendants MedStar EMS, Byrd, Dees and those fictitious defendants whose acts or omissions contributed to the unlawful restraint, detention, seizure, or transport of W.F.

98. At all relevant times, W.F. was a minor child, and Plaintiff Miller was W.F.'s parent, lawful custodian, and person authorized to make ordinary medical and custodial decisions for W.F.

99. Plaintiff Miller did not consent to Defendants taking custody, control, possession, or physical charge of W.F. for purposes of ambulance transport.

100. Plaintiff Miller objected to ambulance transport and offered to take W.F. for medical evaluation by other means.

101. The EMS workers, acting individually and within the line and scope of their employment, agency, service, or representative capacity with MedStar EMS, intentionally took physical control of W.F. and transported him from the Buc-ee's parking lot by ambulance.

102. Plaintiff alleges that Defendants lacked valid consent, lawful authority, court order, warrant, exigent medical necessity, or other legal justification to restrain, detain, seize, remove, or transport W.F. against Plaintiff Miller's objection.

103. Plaintiff further alleges that W.F.'s movement, crying, audibility, and observable responsiveness negated any reasonable basis for treating the situation as one requiring involuntary emergency seizure or transport.

104. By taking physical control of W.F. and transporting him by ambulance without consent or lawful justification, Defendants wrongfully restrained W.F.'s freedom of movement and interfered with Plaintiff Miller's lawful custodial control over W.F.

105. Defendants' conduct caused W.F. to be confined, restrained, detained, or transported against the will of his parent and lawful custodian.

106. Defendant MedStar EMS is liable for the acts and omissions of the EMS caseworkers because those acts and omissions were committed within the line and scope of their employment, agency, service, or representative capacity with MedStar EMS.

107. As a direct and proximate result of Defendants' wrongful restraint, detention, seizure, and transport of W.F., Plaintiff suffered damages including unwanted confinement, loss of liberty, physical handling, emotional distress, fear, disruption of custodial security, and other damages to be proven at trial.

108. Plaintiff claims all compensatory and punitive damages recoverable under Alabama law for Defendants' false imprisonment, wrongful detention, unlawful restraint, and unauthorized transport of W.F.

**WHEREFORE**, Plaintiff W.F., a minor child, by and through her parent and next friend, Brittany Miller, demands judgment in her favor and against Defendants MedStar EMS, Dees, Byrd, and the applicable fictitious defendants, jointly and severally where permitted by law, and requests compensatory damages, punitive damages, costs of court, prejudgment and post-judgment interest where permitted by law, and such other and further relief as this Court deems just and proper.

## COUNT IV: NEGLIGENT AND WANTON HIRING, TRAINING, SUPERVISION, RETENTION, AND POLICIES
### (*Against Defendant MedStar EMS*)

109. Plaintiff W.F. incorporates by reference the "Facts Alleged Against Defendant Medstar EMS" as if fully set forth herein.

110. This Count is brought against Defendant MedStar EMS and those fictitious defendants whose acts or omissions contributed to the negligent or wanton hiring, training, supervision, retention, staffing, credentialing, oversight, quality assurance, policies, procedures, customs, or practices alleged herein.

111.   At all relevant times, MedStar EMS owed a duty to W.F. to use reasonable care in hiring, training, supervising, retaining, staffing, credentialing, and overseeing emergency medical personnel who would assess, treat, transport, document, and communicate concerning infant and pediatric patients.

112.   MedStar EMS further owed a duty to establish, maintain, implement, enforce, and monitor reasonable policies and procedures concerning pediatric emergency assessment, infant responsiveness, opioid-overdose evaluation, naloxone administration, parental consent and refusal, emergency transport criteria, medical documentation, hospital handoff communications, and interactions with law enforcement.

113.   MedStar EMS knew or should have known that emergency medical personnel responding to infants and young children must be properly trained and supervised because inaccurate pediatric assessments, unsupported emergency transport decisions, improper medication administration, and misleading medical communications can cause serious harm to a child and foreseeable custodial, medical, and legal consequences.

114.   MedStar EMS breached its duties by negligently, wantonly, or recklessly failing to adopt, implement, enforce, or monitor adequate policies, procedures, training, supervision, and quality-control systems for evaluating whether an infant is truly unresponsive, experiencing respiratory compromise, exhibiting signs of opioid exposure, or requiring emergency ambulance transport.

115.   MedStar EMS breached its duties by negligently, wantonly, or recklessly failing to train and supervise its personnel regarding the circumstances under which naloxone may be administered to an infant and the clinical findings required to support such administration.

116.    MedStar EMS breached its duties by negligently, wantonly, or recklessly failing to train and supervise its personnel regarding accurate EMS documentation and accurate handoff communications to hospitals, law enforcement, and other involved persons or entities.

117.    MedStar EMS breached its duties by negligently, wantonly, or recklessly failing to train and supervise its personnel regarding the effect that inaccurate or unsupported statements concerning suspected opioid exposure, overdose, unresponsiveness, or improvement after naloxone may have on subsequent medical, law-enforcement, and child-welfare actions.

118.    MedStar EMS breached its duties by negligently, wantonly, or recklessly failing to maintain adequate procedures for reviewing, auditing, correcting, and preventing inaccurate pediatric assessments, unsupported naloxone administration, unsupported involuntary transport decisions, and materially misleading EMS reports.

119.    MedStar EMS breached its duties by negligently, wantonly, or recklessly retaining, assigning, permitting, or authorizing personnel to respond to pediatric calls when MedStar EMS knew or, through reasonable diligence, should have known that such personnel were inadequately trained, supervised, instructed, monitored, or suited for the responsibilities assigned.

120.    MedStar EMS's failures were a direct and proximate cause of the acts, omissions, injuries, and damages alleged herein.

121.    As a direct and proximate result of MedStar EMS's negligent and wanton hiring, training, supervision, retention, staffing, credentialing, oversight, policies, procedures, customs, and practices, W.F. suffered damages including unwanted medical intervention, ambulance transport, administration of Narcan, hospital evaluation, medical testing, distress,

disruption of custodial security, separation from her parent's care, and other damages to be proven at trial.

122.    Plaintiff claims all compensatory and punitive damages recoverable under Alabama law for MedStar EMS's negligent and wanton hiring, training, supervision, retention, staffing, credentialing, oversight, policies, procedures, customs, and practices.

**WHEREFORE**, Plaintiff W.F., a minor child, by and through her parent and next friend, Brittany Miller, demands judgment in her favor and against Defendant MedStar EMS and the applicable fictitious defendants, jointly and severally where permitted by law, and requests compensatory damages, punitive damages where recoverable, costs of court, prejudgment and post-judgment interest where permitted by law, and such other and further relief as this Court deems just and proper.

## COUNT V: MALICIOUS PROSECUTION
### (*Against Defendants Garcia and Fulmer*)

123.    Plaintiff Miller incorporates by reference the "Facts Alleged Against Defendants Garcia and Fulmer" and if fully set forth herein.

124.    This Count is brought by Plaintiff Brittany Miller individually against Defendants Garcia and Fulmer.

125.    Defendants Garcia and Fulmer initiated, procured, caused, continued, or participated in the criminal prosecution of Plaintiff Miller for violation of Alabama Code § 32-5A-191(a)(5).

126.    The criminal charge was instituted without probable cause.

127.    Defendants acted with malice, improper purpose, or reckless disregard for Plaintiff Miller's rights.

128.    The criminal proceeding terminated in Plaintiff Miller's favor when the charge was dismissed on December 5, 2024.

129.    As a direct and proximate result of Defendants' conduct, Plaintiff Miller suffered damages, including loss of liberty, emotional distress, reputational harm, loss of care, custody, and control of her minor child, attorney fees, court costs, and other damages to be proven at trial.

**WHEREFORE**, Plaintiff Brittany Miller demands judgment in her favor and against Defendants Garcia and Fulmer, jointly and severally where permitted by law, and requests compensatory damages, punitive damages, costs of court, prejudgment and post-judgment interest where permitted by law, attorney fees and expenses where recoverable, and such other and further relief as this Court deems just and proper.

*/s/ Yancey N. Burnett*
Yancey N. Burnett (BUR101)
Attorney for Plaintiff
Burnett Law Firm
8319 Spanish Fort, Blvd.
Spanish Fort, Alabama
Office: (251) 662-7500
Email: Ynburnett@yahoo.com

**JURY DEMAND**

Plaintiffs demands a trial by struck jury on all issues so triable.

*/s/ Yancey N. Burnett*
Yancey N. Burnett (BUR101)